19388

CENTRAL ELECTRIC POWER COOPERATIVE, INC.,
Respondent, v. C. Oliver BROWN, Appellant
(187 S. E. (2d) 509)

*Messrs. Frank L. Taylor,* and *Frank L. Taylor, Jr.,* of
Columbia, *for Appellant,*

*William H. Gibbes, Esq.,* of *Berry, Lightsey, Gibbes* and *Bowers,* Columbia, *for Respondent,*

March 13, 1972.

BUSSEY, Justice:

This is an appeal from a jury verdict in the amount of $36,500.00, in a condemnation proceeding wherein respondent was acquiring a power line right of way across the property of appellant. The right of way was 150 feet in width and included within the condemnation was the right to cut all danger trees beyond the right of way tall enough to come in contact with respondent's power lines. Actually taken for the right of way was 22.67 acres from a tract of land owned by appellant containing approximately 500 acres. Two small parcels of land, containing in the aggregate less than one acre, were for all practical purposes isolated. It is stipulated that certain portions of appellant's remaining acreage suffered no severance or special damages. It was also agreed that the highest and best use of appellant's property was for the purpose of future residential development, such being located about seven miles north of Columbia and lying between the New Monticello Road, Highway 215, and the Broad River.

Three real estate experts testified for the appellant and two for the respondent. These witnesses valued the acreage actually condemned at anywhere from one thousand to fifteen hundred dollars per acre. The high appraiser for respondent fixed the total damages at $35,316.00, very nearly the amount of the jury verdict, and the low appraiser for the appellant fixed the total damages of $77,800.00. All appraisers gave consideration to the isolation of the two small parcels and special damages to the remainder as a result of the danger trees clause. The wide variance in the total appraisal figures resulted from the fact that appellant's witnesses were of the view that 350 acres of the remainder of his land suffered special or severance damages, while respondent's witnesses were of the view that any damage thereto would be too speculative to consider.

Prior to the instant condemnation, South Carolina Electric and Gas Company had acquired a right of way 160 feet in width for a double transmission line over a portion of appellant's property, with the result of appellant having a

frontage on the New Monticello Road of only about 600 feet, which was unaffected by any major right of way encumbrance. Such was the only available entrance to any proposed or future residential subdivision without going under a major transmisison line or lines. Respondent's right of way and transmission lines now cross the only un-encumbered entrance appellant had prior to the condemnation, with the result that no entrance can now be had to any subdivision of appellant's land except by passing under one or more major transmission lines. There is evidence that the area was beautifully wooded before respondent cleared the right of way and the adjacent danger trees. The testimony of appellant's appraisers as to the severance, or special damages to the remaining 350 acres was predicated on the detrimental effect of the transmisison lines on the appearance of the only entrance into the tract from the highway.

The right of way, as condemned, more or less follows the perimeter of appellant's property along the southern and eastern boundaries, until it reaches a point where it runs parallel and adjacent to the right of way of South Carolina Electric and Gas Company. Respondent contends that it initially contemplated putting its lines diagonally across the center of appellant's property, but relocated such along the perimeter as above set forth at the request, insistence, and agreement of the appellant.

Appellant testified as to certain general matters, location of land, etc., but expressed no opinion as to its value or as to his damages. On cross-examination, and over objection, counsel for respondent was allowed to question him at length as to whether or not he had requested and/or agreed to the location of the right of way where it was eventually located. Appellant strongly and categorically denied any such request or agreement, even though counsel repeatedly put him on notice that his testimony in this respect would be contradicted.

A witness for the respondent, again over the strenuous objection of appellant, was allowed to contradict appellant at

length in this particular and testify in detail as to discussions and agreement on the part of appellant that the line be constructed around the perimeter of his property. The trial court admitted this testimony, apparently on the theory that there was a duty on the part of appellant to minimize his damages; that a straight line, even though it lay diagonally, would, of course, be the shortest line across appellant's property; and that it was for the jury to say whether there had been any additional damage to the property by the location along the perimeter and thus for the jury to say whether such additional damage was occasioned by the landowner's request.

In fairness to the trial judge, when he made this ruling the appraisers for respondent had not yet testified, and His Honor apparently anticipated that respondent would offer testimony to the effect that any severance or special damages would have been much less, or even non-existent, had the initially contemplated diagonal right of way been condemned. The record appropriately does not contain all of the testimony, but there is no suggestion that any evidence was offered tending to prove what the damages would have been had the right of way been laid in a straight, though diagonal, line across the property. The following statement appears in appellant's brief,

*"There is no testimony in the record to indicate what the damages would have been had the right of way gone in a straight line across the property; but it seems obvious to the writer, at least, that the damages would have been greater if the right of way had been so located."* (Emphasis added.)

Not only does respondent's brief fail to take issue with the foregoing, but twice asserts in rather forceful language that appellant's damage to his remaining acreage was greatly minimized, diminished and mitigated as a result of the right of way being taken along the perimeter of his property, rather than in a straight diagonal line across the middle thereof. Any issues of fact herein are, of course, not for the determination of this Court, but from a review of the ex-

hibits, we are inclined to agree with counsel for both parties that damages to the remaining acreage were most probably minimized as a result of the perimeter location of the right of way.

In any event, there being no evidence to the effect that the perimeter location enhanced, rather than minimized, appellant's damages, whether or not such location was upon his request was, we think, wholly irrelevant to any issue in the cause. The effect of allowing cross-examination and impeaching testimony on this point was, we think, clearly prejudical. The injection of this irrelevant matter into the trial and the admission of evidence tending to impeach the appellant on a purely collateral and irrelevant matter of necessity, had a tendency to distract the attention of the jury from the real issues in the case. *McVey v. Whittington,* 248 S. C. 447, 151 S. E. (2d) 92; *State v. Brock,* 130 S. C. 252, 126 S. E. 28.

His Honor's charge dealt at some length with the issues of whether or not there had been an agreement as to the location of the right of way and the effect of any such agreement, his charge in this respect being duly excepted to. Under the circumstances we do not think that such were proper issues to be submitted to the jury. We do not deem it necessary to deal with the charge in detail, but upon analysis are of the view that the content thereof could well have led the jury to erroneously conclude that if the appellant had requested or agreed to the actual location, such would bar his recovery of any special damages other than those admitted by respondent's appraisers. That the jury may have so understood his instructions is rather strongly suggested by the fact that there is no very substantial difference between the verdict and the highest appraisal offered by the respondent.

Under all of the circumstances hereinabove reflected, we conclude that the probability of prejudice, both from the

erroneous admission of evidence and the charge, was so great as to require a new trial.

Reversed.

Moss, C. J., and Lewis, Brailsford and Littlejohn, JJ., concur.